Edward J. MUHL, Superintendent of Insurance of the State of New York, and his successors in office as Superintendent of Insurance of the State of New York, as Liquidator of Nassau Insurance Company, in that capacity and in his capacity as receiver of certain rights and assets of judgment debtor Ardra Insurance Company

v.

TIBER HOLDING CORPORATION.

No. CIV.A. 95–5284.

United States District Court,
E.D. Pennsylvania.

Aug. 24, 1998.

William F. Costigan, Costigan, Hargraves and McConnell, P.C., New York, NY, for Plaintiff.

Thomas E. Zemaitis, Pepper, Hamilton & Scheetz, Philadelphia, PA, Arlin M. Adams, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, Robert G. Manson, Richard H. Silberberg, Davis C. Singer, New York, NY, for Defendants.

### ORDER AND MEMORANDUM

DuBOIS, District Judge.

### ORDER

**AND NOW**, to wit, this 24th day of August, 1998 upon consideration of defendant Tiber Holding Corporation's Motion for Summary Judgment (Document No. 66, filed February 5, 1998); Plaintiff's Memorandum in Opposition to the Motion of Defendant Tiber Holding Corporation for Summary Judgment (Document No. 69, filed March 5, 1998); Defendant Tiber Holding Corporation's Reply Brief In Further Support of Its Motion for Summary Judgment (Document No. 70, filed March 17, 1998); Plaintiff's Motion for Summary Judgment (Document No. 73, filed April 9, 1998); Plaintiff's Memorandum In Support of his Motion for Summary Judgment (Document No. 67, filed February 10,1998); Memorandum of Law of Defendant Tiber Holding Corporation in Opposition to Plaintiff's Motion for Summary Judgment (Document No. 68, filed March 3, 1998); Plaintiff's Reply Memorandum in Support of his Motion for Summary Judgment (Document No. 71, filed March 20, 1998) and Stipulation of Facts Regarding Choice of Law on Breach of Contract Claim (Document No. 56, filed October 27, 1997), **IT IS ORDERED THAT:**

Defendant, Tiber Holding Corporation's Motion for Summary Judgment is **DENIED;**

Plaintiff, Edward J. Muhl's Motion for Summary Judgment is **DENIED.**

### IT IS FURTHER ORDERED THAT:

1. Pursuant to Federal Rule of Civil Procedure 15(a), plaintiff is granted fifteen days within which to file a second amended complaint for the limited purpose of adding to the Amended Complaint allegations, raised in plaintiff's Motion for Summary Judgment, regarding dividends paid by Ardra Insurance Co., Ltd. to defendant in 1985 and 1986. Defendant's answer to those allegations, supplementing its Answer to the Amended Complaint, shall be filed within ten days of service of the second amended complaint. One copy of the second amended complaint and the answer shall be served on the Court (Chambers, Room 12613) when the originals are filed.

2. Within fifteen days, plaintiff and defendant shall supplement the factual record, by stipulation if they are in agreement, relating to choice of law issues including, but not limited to (a) the place or places where defendant and Corporate Holding Corporation signed the Agreement of Sale for Ardra's outstanding stock, (b) the place or places where Corporate Holding Corporation and defendant held board meetings at which the sale of Ardra's outstanding stock to Corporate Holding Corporation was discussed and approved, and (c) any other information relevant to the choice of law determination with respect to plaintiff's breach of contract claim. Two copies of all such documents shall be served on the Court when the originals are filed.

3. The entry of the instant Order is **WITHOUT PREJUDICE** to plaintiff's right to present evidence and argument at trial regarding (a) alleged affirmative concealment of the claimed fraudulent conveyances, (b) whether defendant should be equitably estopped from relying on a statute of limitations defense with regard to the claim of fraudulent conveyances, and (c) whether the statute of limitations should be equitably tolled with respect to the fraudulent conveyances claim;

4. The entry of the instant Order is **WITHOUT PREJUDICE** to plaintiff's right to present evidence and argument at trial regarding the commission by defendant of actual fraud, in addition to constructive fraud, in making the conveyances at issue;

5. The entry of the instant Order is **WITHOUT PREJUDICE** to defendant's right to present evidence at trial that plaintiff knew, or reasonably should have known, of the allegedly fraudulent conveyances more than two years prior to filing suit and arguing that, as a re ult, plaintiff's claim of actual fraud is time barred and plaintiff is precluded from invoking the doctrines of equitable estoppel or equitable tolling with regard to the statute of limitations for the claim of constructive fraud.

### MEMORANDUM

Plaintiff, the Superintendent of Insurance of the State of New York, initiated this litigation in his capacity as Liquidator of Nassau Insurance Company ("Nassau") in May, 1994 against defendant as the former owner of Ardra Insurance Co., Ltd ("Ardra"). Initially, plaintiff sought to satisfy a 1994 New York state court judgment of $16.3 million against Ardra by piercing its corporate veil and enforcing the judgment against defendant. The judgment arose from Ardra's reinsurance treaties with Nassau, a New York stock casualty insurer.

In 1996, after plaintiff was appointed receiver of certain rights and assets of Ardra, he amended the complaint in this case, and added two additional claims. Plaintiff now seeks, in his capacity as Liquidator of Nassau, to pierce Ardra's corporate veil and to set aside allegedly fraudulent conveyances totaling $8,115,000.00 which Ardra made to defendant. In addition, in his capacity as receiver of certain rights and assets of Ardra, plaintiff claims damages as a third party beneficiary of a 1990 contract between defendant and Corporate Holding Corporation ("Corporate Holding") in which defendant sold all outstanding shares of Ardra to Corporate Holding.

The related ownership of Ardra, Nassau, Tiber Holding Corporation ("Tiber" or "defendant"), and the other corporations involved in this case, as well as the factual and procedural history of the case, is set forth in the Court's Memorandum of September 18, 1997. *See Curiale v. Tiber,* No. 95–5284, 1997 WL 597944 (Sept. 18, 1997).

Plaintiff seeks to pierce Ardra's corporate veil and hold defendant liable for the New York state judgment against Ardra, because, according to plaintiff, defendant ignored Ardra's corporate form, completely dominated the company, and exploited Ardra's assets for other purposes, thus making Ardra unable to meet its obligations, including reinsurance treaties with Nassau.

In his claim for fraudulent conveyances, plaintiff alleges that from 1979 to 1981, Ardra purchased 8,115 shares of stock in defendant at the price of $1,000.00 per share, transferring, in total, $8,115,000.00 to defendant. Plaintiff alleges that the conveyances from Ardra to Tiber were fraudulent under New York Debtor and Creditor Law because the shares were not worth $8,115,000.00 and the transactions left Ardra insolvent or with unreasonably small capital with which to conduct its business. *See* N.Y. Debt. & Cred. Law §§ 273, 274.

Plaintiff also alleges that defendant breached the December 3, 1990 Agreement of Sale for Ardra's stock under which defendant sold all of Ardra's outstanding stock to Corporate Holding. In the Agreement of Sale, defendant agreed to maintain Ardra's surplus and capital accounts at a minimum balance of $125,000.00 for five years. Ardra's financial statements show such a balance, but plaintiff contends that because the financial statements did not take into account the $16.3 million judgment against Ardra in New York state court, defendant had breached the agreement, and, plaintiff, acting as receiver of Ardra's rights and assets, is entitled to damages as a third party beneficiary of that Agreement of Sale.

In September, 1997, the Court ruled on the choice of law issues with respect to the claims of fraudulent conveyances and piercing the corporate veil. Using New York choice of law principles, as the case had been transferred from the Southern District of New York, the Court concluded that New York law would apply to those claims. At

that time, the Court deferred ruling on the choice of law issue with respect to the breach of contract claim because the record was insufficient and inconsistent and directed the parties to supplement the record.

Presently before the Court are the motions for summary judgment of plaintiff and defendant. Plaintiff has moved for summary judgment on the claims of fraudulent conveyances and piercing the corporate veil. Defendant has moved for summary judgment on the claims of fraudulent conveyances and breach of contract. For the reasons set forth below, the Court denies both motions.

## I. Standard for Summary Judgment

In deciding a motion for summary judgment the Court must determine whether there exist any triable issues of fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant the motion if it finds that the pleadings, together with depositicns, admissions, answers, interrogatories, and affidavits present "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In responding to a motion for summary judgment, the non-moving party must present "more than a mere scintilla of evidence in its favor" and may not rely on unsupported assertions or conclusory allegations. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citation omitted). "When considering a motion for summary judgment, the court must view all evidence in favor of the non-moving party.... Additionally, all doubts must be resolved in favor of the non-moving party." *Securities and Exchange Commission v. Hughes Capital Corp.*, 124 F.3d 449, 452 (3d Cir.1997) (citations omitted). With these standards in mind, the Court will address plaintiff and defendant's motions for summary judgment.[1]

## II. Fraudulent Conveyances

### A. Statute of Limitations

▆ Defendant argued that plaintiff's claim of fraudulent conveyances is time-barred because it was brought under the "constructive fraud" provisions of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. Law § 270 *et seq.* (McKinney 1990). Constructive fraud is defined as "as a breach of a duty which, irrespective of moral guilt and intent, the law declares fraudulent because of its tendency to deceive, to violate a confidence or to injure public or private interests which the law deems worthy of special protection." *Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 411 N.Y.S.2d 945 (N.Y.App.Div.1978). In contrast to actual fraud, it is not necessary to prove intent to establish a claim of constructive fraud. The statutes under which plaintiff brought his claim of constructive fraud require a lack of fair consideration, and a resulting insolvency, but neither statute requires fraudulent intent. *See, e.g.,* N.Y. Debt. & Cred. Law § 273 (McKinney 1990) ("Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.").

▆ The statute of limitations for constructive fraud is six years. *Monaco v. New York University Medical Center*, 213 A.D.2d 167, 623 N.Y.S.2d 566 (N.Y.App.Div.1995). Unlike the statute of limitations for actual fraud, six years from the time that the fraud is committed, or two years from the time the plaintiff discovered the fraud or reasonably should have discovered it, whichever is greater, *see* C.P.L.R. § 213(8), there is no discovery rule applicable to the statute of limitations for constructive fraud. *See Whitney Holdings v. Givotovsky*, 988 F.Supp. 732, 747 (S.D.N.Y.1997). The statute of limitations begins to run at the commission of the constructive fraud. *Id.*

In this case, defendant argues that since the fraudulent conveyances in question occurred in 1979 and 1981, the statute of limita-

---

**1.** As this case is brought under diversity jurisdiction, 18 U.S.C. § 1332, the Court will apply state substantive law and federal procedural law. *Erie* *R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

tions expired at the latest in 1987, many years before plaintiff filed suit in 1994. In response, plaintiff contends in the alternative that (1) defendant waived its right to assert the defense of a statute of limitations by arguing to the Court that the statute of limitations was six years from the date of accrual or two years from discovery, (2) the Court previously held that the six year/two year statute of limitation applied to this claim, (3) the statute of limitations began to run in 1994, when a judgment against defendant was entered by a New York state court, and plaintiff had a "mature" claim against defendant, (4) the Court should equitably estop defendant from asserting the statute of limitations as a defense because defendant affirmatively concealed the fraud, (5) the statute of limitations was tolled because of defendant's fraudulent concealment, and (6) the Amended Complaint could be read to allege actual fraud, in addition to constructive fraud, and therefore the two year discovery exception applies. As discussed below, the Court rejects plaintiff's arguments with the exception of the issues of equitable estoppel, equitable tolling, and whether the complaint alleges actual fraud.

### 1. Defendant Did Not Waive its Right to Assert a Statute of Limitations Defense

In its Answer to the Amended Complaint, defendant asserted that the fraudulent conveyances claim was time-barred on the ground that the conveyances occurred more than six years prior to plaintiff filing suit. Because defendant asserted this defense in its Answer, the Court concludes that it was not waived.

### 2. The Court Has Not Ruled Previously on the Statute of Limitations Issue

Plaintiff contends that the Court has already ruled that the appropriate statute of limitations for the fraudulent conveyances claim is six years from the time of the conveyances, with a two year discovery exception. Plaintiff is mistaken. The Court cited

this statute of limitations in a footnote as an example of possible conflicts between New York and Bermuda law. The Court did not rule on whether that was the correct statute of limitations to apply to the fraudulent conveyances claim. The Court now rules that under New York state law, the statute of limitations for constructive fraud is six years from the commission of the fraud without a discovery exception. However, as discussed below, plaintiff will be permitted to argue that the doctrines of equitable estoppel and equitable tolling are applicable to the fraudulent conveyances claim.

### 3. The Statute of Limitations Did Not Begin to Run in 1994

■ Plaintiff claims that he did not have a "mature" claim against defendant until the New York court issued a judgment against Ardra in 1994, and therefore the suit is not time-barred. New York Debtor and Creditor Law provides separate remedies for plaintiffs with "not mature" and "mature" claims. See N.Y. Debt. and Cred. § 278, 279 (McKinney's 1990).[2] These statutes provide remedies for the causes of action created by other provisions of the New York Debtor and Creditor Law, including the statutes under which plaintiff brought his claims of constructive fraud. The separate remedies do not suggest that a claim accrues, and the statute of limitations begins to run, only when it is "mature." To the contrary, the acknowledgment of remedies for "not mature" claims supports the conclusion that the statute of limitations begins to run at time of the commission of the fraud.

### 4. Equitable Estoppel

■ A court may equitably estop a defendant from asserting a statute of limitations defense if the defendant engaged in "fraud, misrepresentation or deception" which prevented plaintiff from filing a timely action. *Simcuski v. Saeli*, 44 N.Y.2d 442, 449, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978). If a defendant stands in a fiduciary relationship with a plaintiff, then failure to disclose

---

**2.** A "mature" claim is one that is unconditionally due, such as a judgment. Black's Law Dictionary 979 (6th ed.1990). An "unmature" claim is one which is unliquidated or contingent. N.Y. Debt. & Cred. Law § 270 (McKinney's 1990).

the facts underlying a claim may also allow a plaintiff to invoke equitable estoppel. *Whitney Holdings v. Givotovsky,* 988 F.Supp. 732 (S.D.N.Y.1997).

■ "Where one has obtained an advantage by fraud, equity will not permit him to hold it by resorting to the Statute of Limitations." *Erbe v. Lincoln Rochester Trust Co.,* 13 A.D.2d 211, 214 N.Y.S.2d 849, 852 (N.Y.App.Div.1961) (*quoting Clarke v. Gilmore,* 149 A.D. 445, 133 N.Y.S. 1047 (N.Y.App.Div.1912)). However, to invoke equitable estoppel, a plaintiff "must show that he brought his action within a reasonable time after the facts giving rise to the estoppel have ceased to be operational. Equitable estoppel, therefore, looks at the parties' conduct only to determine their relative blameworthiness in delaying the commencement of suit." *Overall v. Estate of Klotz,* 52 F.3d 398, 404 (2d Cir.1995) (internal citations omitted).

■ Defendant contends that equitable estoppel is not available in suits for constructive fraud because the language and history of the statute of limitations suggest that to make equitable estoppel available would contravene the intent of the legislature, namely for the statute of limitations to run from the commission of the fraud without recourse to a discovery rule. In support of its position, defendant cites a recent case from the Southern District of New York, *Whitney Holdings v. Givotovsky,* 988 F.Supp. 732 (S.D.N.Y. 1997).

In *Whitney,* the court held that equitable estoppel was not appropriate in a constructive fraud case based on breach of fiduciary duty because "the bases for equitable estoppel and the breach of fiduciary duty are identical." *Id.* at 747. The claim of constructive fraud in *Whitney* was premised on non-disclosure and the basis for applying equitable estoppel was the same act of non-disclosure. The practical result, in such a case, would be to toll the statute of limitations until the plaintiff discovered the constructive fraud and thereby circumvent the legislature's decision not to allow a discovery exception to the statute of limitations. *Id.* at 746–747.

The Court agrees with the *Whitney* court, but the allegations in this case make it distinguishable. Plaintiff contends that in addition to the constructive fraud—the conveyances from Ardra to Tiber—Tiber affirmatively acted and purposefully failed to act in order to conceal the conveyances. As opposed to *Whitney,* in which the basis of the substantive claim and equitable estoppel was the same, the bases for the substantive claim of constructive fraud is separate and apart from the grounds for invoking equitable estoppel in this case.

■ Plaintiff alleges that defendant repeatedly concealed the allegedly fraudulent conveyances. Defendant alleges that plaintiff had sufficient notice of the allegedly fraudulent conveyances and did not file suit in a timely manner after that notice. There are genuine issues of material fact (a) as to whether defendant engaged in affirmative acts of misrepresentation and concealment which would serve to equitably estop defendant from asserting a statute of limitations defense, and (b) as to when plaintiff had notice, or reasonably should have had notice, of the existence of the allegedly fraudulent conveyances and whether plaintiff filed suit in a timely manner after that notice. Thus, the Court denies defendant's Motion with respect to the statute of limitations, and both parties will be allowed to litigate these issues at trial.

**5. Equitable Tolling**

■ Under the doctrine of equitable tolling, the statute of limitations is tolled during the time that a defendant's acts of fraudulent concealment and misrepresentations prevent the plaintiff from filing suit. *Simcuski,* 44 N.Y.2d at 442, 406 N.Y.S.2d 259, 377 N.E.2d 713. Plaintiff argues that if defendant is not estopped from asserting the statute of limitations as a defense, then it was tolled because of defendant's concealment of the allegedly fraudulent conveyances. Defendant presents the same arguments with respect to equitable tolling as it does in opposition to equitable estoppel—the doctrine is not available in suits for constructive fraud, and even if it is available, plaintiff did not exercise due diligence in filing the suit in a timely manner

after he became aware, or reasonably should have become aware, of the conveyances which plaintiff alleges are fraudulent.

A decision on the issue of equitable tolling raises the same fact questions as a decision on the issue of equitable estoppel. *See id.* As stated above, there are genuine issues of material fact as to the applicability of equitable estoppel. Thus, summary judgment on the issue of equitable tolling is inappropriate.

### 6. The Complaint Sets Forth A Claim for Actual Fraud In Addition To Constructive Fraud

■ In his response to defendant's Motion for Summary Judgment, plaintiff contends that the Amended Complaint may be read to allege a claim for actual fraud, which would then be subject, under New York law, to a limitations period of six years from the commission of the fraud or two years from the time plaintiff discovered the fraud or should have reasonably discovered it. *See* N.Y. C.P.L.R. § 213(8). The distinction between actual fraud and constructive fraud is one of intent. To prove actual fraud, plaintiff must show that the conveyance was made with the actual intent to "hinder, delay, or defraud either present or future creditors." N.Y. Debt. & Cred. Law § 276 (McKinney 1990). Intent may be proven by the circumstances surrounding the conveyances. *See Nasaba v. Harfred Realty*, 287 N.Y. 290, 39 N.E.2d 243 (N.Y.1942); *Pen Pak Corp. v. LaSalle National Bank of Chicago*, 240 A.D.2d 384, 658 N.Y.S.2d 407 (App.Div.1997). New York courts have held that allegations of constructive fraud in making conveyances may be read to allege actual fraud if the complaint includes allegations of intent to defraud at the time of the conveyances alleged to be fraudulent. *See id., Leone v. Sabbatino*, 235 A.D.2d 460, 652 N.Y.S.2d 628 (N.Y.App.Div.1997); *Scola v. Morgan*, 66 A.D.2d 228, 412 N.Y.S.2d 893 (N.Y.App.Div. 1979).

In this case, plaintiff alleged in the Amended Complaint that defendant caused Ardra to prepare false financial statements from 1979 to 1981, when the allegedly fraudulent conveyances were made, to "camouflag[e] the diversions from Ardra," and to file the false financial statements with the Bermuda regulatory authorities in those years. Amended Complaint at ¶¶ 43–45, and in the following years as well, *id.* at ¶¶ 54–58. These allegations are sufficient to set forth a claim of actual fraud. Therefore, at trial, plaintiff will be allowed to present evidence in support of a claim of actual fraud. Defendant contends that if the Amended Complaint sets forth an allegation of actual fraud, that claim is also barred because plaintiff did not file suit within two years of the date plaintiff reasonably should have discovered the allegedly fraudulent conveyances. There is a genuine issue of material fact with regard to this issue as well. Defendant will be allowed at trial to present evidence that plaintiff discovered, or reasonably should have discovered, the alleged fraud more than two years prior to the filing of suit and argue that this suit is therefore barred by the statute of limitations.

### B. Plaintiff's Motion for Summary Judgment

■ Plaintiff moves for summary judgment on his claim that the conveyances from Ardra to defendant constituted constructive fraud. To prove the claim under New York Debtor and Creditor law, plaintiff must show that the conveyances were made without fair consideration and that the conveyances left Ardra insolvent or with "unreasonably small capital" for the business in which Ardra was engaged. N.Y. Debt. & Cred. Law §§ 273, 274 (McKinney 1990). Fair consideration is defined, *inter alia*, as a fair equivalent for the property given in good faith. N.Y. Debt. & Cred. Law § 272 (McKinney 1990).

Defendant contends, *inter alia*, that plaintiff is entitled to less damages than claimed because defendant re-conveyed cash and cash-equivalents to Ardra equal to $2,725,-666.00. New York courts have concluded that a voluntary reconveyance will absolve a defendant of liability for a claim of fraudulent conveyances if the reconveyance leaves the creditor/plaintiff in the same position as if the original conveyances had never occurred. *See Vinlis Const. Co. v. Roreck*, 67 Misc.2d 942, 325 N.Y.S.2d 457 (Sup.Ct.1971). This defense is often used in suits alleging fraudulent conveyances of land or other real prop-

erty upon which the creditor can place a lien after the reconveyance so that the assets are available to satisfy the debt. *See, e.g., Palumbo v. Palumbo,* 55 Misc.2d 264, 284 N.Y.S.2d 884 (Supr.Ct.1967) (real estate reconveyed); *Seagirt Realty Corp. v. Chazanof,* 13 N.Y.2d 282, 246 N.Y.S.2d 613, 196 N.E.2d 254 (1963) (real estate); *Ginsberg v. Commissioner of Internal Revenue Service,* 305 F.2d 664 (2d Cir.1962) (stock certificates).

More than one issue of material fact remains with regard to two essential elements of the fraudulent conveyance claim—whether the shares of Tiber constituted fair consideration for the $8,115,000.00 which Ardra paid Tiber for the shares and whether those conveyances left Ardra insolvent or with unreasonably small capital. According to defendant's brief in opposition to plaintiff's Motion for Summary Judgment, it repurchased some of those shares from Ardra for slightly more money than was originally paid for them, and defendant also claims that Ardra exchanged 4900 shares with another company owned by the DiLoretos, Haven Insurance Company ("Haven"), in return for Haven accepting responsibility for $5.5 million of Ardra's loss reserves. The remaining shares were returned to defendant as a dividend from Ardra in 1985. Defendant argues that because Ardra received value for the stock above what it initially paid, these transactions prove that Ardra received fair consideration at the time of the conveyances.

Plaintiff contends that Ardra did not receive fair consideration because there was no market for the Tiber stock, it did not pay a dividend, the stock did not include voting rights, and the conveyances prevented Ardra from earning interest on over 99 percent of its assets. Furthermore, plaintiff asserts, in a lengthy analysis in his Reply Memorandum, that the affidavit testimony of Richard DiLoreto, president of Tiber, suggests that defendant did not repurchase its shares for cash and furthermore, defendant has produced no documentary evidence of the transaction between Ardra and Haven. These are issues which are not suited for resolution on summary judgment as they involve genuine issues of material fact. *See American Inv. Bank v. Marine Midland Bank,* 191 A.D.2d 690, 595 N.Y.S.2d 537 (App.Div.1993); *Wagman v. Lagno,* 141 A.D.2d 720, 529 N.Y.S.2d 585 (App.Div.1988). Therefore, plaintiff's Motion for Summary Judgment is denied with respect to the fraudulent conveyances claim.

### III. Breach of Contract Claim

Plaintiff, acting as receiver of Ardra, claims that defendant breached its Agreement of Sale with Corporate Holding and that Ardra, as a third party beneficiary, is entitled to damages for the breach. In its Motion for Summary Judgment, defendant argues that because Ardra's financial statements show a surplus of greater than $125,000.00 through 1995, defendant did not breach its contract with Corporate Holding Corporation. Rather, defendant says it was a sound business decision by Ardra's managers not to provide for the judgment, and that decision has since been ratified by the refusal of the Bermuda Supreme Court (the trial court in Bermuda) to enforce the judgment. Furthermore, according to defendant, plaintiff must show that Ardra relied, to its detriment, on the contract between defendant and Corporate Holding, which it cannot do. Therefore, defendant argues it is entitled to summary judgment on plaintiff's claim for breach of contract.

### A. Choice of Law

When the Court ruled that New York law would be applied to the claims of fraudulent conveyances and piercing the corporate veil, *Curiale,* 1997 WL 597944 at *11, 13, the Court deferred a ruling on the choice of law issue with respect to the breach of contract claim because the record presented at that time was incomplete and inconsistent. On October 27, 1997, pursuant to an Order dated September 25, 1997, the parties submitted a Stipulation of Facts Regarding Choice of Law on Breach of Contract Claim. While the stipulation added to the record, it did not address important issues, in particular the place of contracting. *See Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1030–31 (2d Cir.1996) ("The traditional choice of law factors, the places of contracting and

performance are given the heaviest weight in this [choice of law] analysis").[3]

Because the Court is unable at this time, for lack of an adequate factual record, to address the choice of law issue with respect to the breach of contract claim, defendant's Motion for Summary Judgment with respect to this claim is denied. The parties are ordered to supplement the factual record, by stipulation if they are in agreement, within fifteen days so that the Court may make a choice of law determination before trial.

### IV. Piercing the Corporate Veil

 Plaintiff has moved for summary judgment on its claim of piercing Ardra's corporate veil. Under New York law, plaintiff must show, *inter alia*, that defendant dominated of Ardra and that domination was "used to commit a fraud or other wrong that cause[d] plaintiff's loss." *Wm. Passalacqua Builders v. Resnick Developers*, 933 F.2d 131 (2d Cir.1991). Contrary to plaintiff's assertion, the mere existence of the state court judgment against Ardra does not prove that defendant's alleged domination of Ardra caused harm to Nassau. Plaintiff's theory of causation is based on the allegation that Ardra was unable to meet its obligations in New York state court because defendant drained Ardra of its assets through fraudulent conveyances. As set forth, *supra*, the Court has declined to grant summary judgment to plaintiff on the fraudulent conveyances claim. For that reason, and without addressing the other issues raised by the piercing the corporate veil claim, plaintiff's Motion for Summary Judgment is denied with respect to that claim.

### V. Post–Suit Conveyances

 In his Motion for Summary Judgment, plaintiff requested, in the alternative, summary judgment, under N.Y. Debtor and Creditor Law § 273–a, on the fraudulent conveyance claims with regard to two dividends paid by Ardra to defendant in 1985 and 1986. Section 273–a declares that "[e]very conveyance made without fair consideration when

the person making it is a defendant in an action for money damages ... is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." N.Y. Debt. & Cred. Law § 273–a (McKinney's 1990). Plaintiff had filed suit against Ardra before it paid the dividends to defendant.

As defendant correctly pointed out, those conveyances are not specifically referenced in the Amended Complaint. Plaintiff's contention that the dividends are referenced in more general statements in the Amended Complaint is unavailing. Similarly, the fact that the dividends were referenced in the original Complaint does not support plaintiff's position because the Amended Complaint is now the basis for the case.

 Having said that, the Court in its discretion, may, under Federal Rule of Civil Procedure 15(a), grant leave to a party to amend a pleading when "justice so requires," and it will do so in this case. Leave to amend under Rule 15(a) is freely given; the touchstone of analysis is whether the other party in the action will suffer prejudice as a result of the amendment. *Howze v. Jones and Laughlin Steel*, 750 F.2d 1208, 1212 (3d Cir.1984). There is no evidence of prejudice to defendant, and the Court concludes that defendant will suffer no prejudice if the Court permits an amended complaint, limited to allegations relating to the 1985 and 1986 Ardra dividends to Tiber. On the issue of prejudice, the Court notes that (a) this claim was included in the original Complaint, and (b) in its Motion for Summary Judgment, defendant asked the Court to permit the amendment. Therefore, pursuant to Federal Rule of Civil Procedure 15(a), plaintiff is granted leave to file a second amended complaint within fifteen days for the limited purpose of adding allegations regarding the dividends paid by Ardra to defendant in 1985 and 1986.

---

**3.** In the cover letter which accompanied the stipulation of fact, attorney for defendant stated that counsel anticipated that they would "shortly" submit a supplemental stipulation with additional facts. No such supplemental stipulation has been received.

## VI. Conclusion

For the foregoing reasons, the Motions for Summary Judgment of plaintiff and defendant are denied. Plaintiff and defendant will be allowed to present evidence and argument at trial on the issues of equitable estoppel, equitable tolling, and the statute of limitations. Within fifteen days, plaintiff and defendant shall supplement the factual record, by stipulation if they are in agreement, so that the Court may resolve the choice of law issue with respect to plaintiff's claim for breach of contract before trial. In addition, plaintiff is granted fifteen days to file a second amended complaint for the limited purpose of adding allegations with respect to the dividends paid by Ardra to defendant in 1985 and 1986.